UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Hill Design, Inc.

    v.                                  Civil No. 03-cv-74-SM

Vivian Hodgdon, et al.


**REPORT AND RECOMMENDATION**


    Plaintiff Hill Design, Inc. ("HDI") moves for entry of a default judgment against The Garden Shed, LLC (the "LLC"). The Court held an evidentiary hearing on the motion on June 14, 2006. Shortly after the evidentiary hearing, the Court ordered Patricia Carpenter, a former party in this case, and Howard Carpenter, a non-party, to provide HDI additional discovery pertaining to HDI's damages. Document No. 112. Since then HDI has not submitted any further support for its alleged damages. For the reasons set forth below, the Court finds that HDI has not demonstrated that it is entitled to judgment against the LLC because the evidence does not establish that the LLC violated HDI's rights or caused HDI to suffer any damages. Further, HDI's evidence in support of its motion for contempt of preliminary injunction (document no. 11) is that which was submitted at the damage hearing. It is insufficient to support a violation of the

injunction by the LLC; Ms. Carpenter was dismissed with prejudice; Mr. Carpenter was never a party; and the injunction was not issued against any of them in any event.

## Standard of Review

After a default has been entered against a party, the court has broad authority and discretion to conduct any such hearings as it deems necessary in consideration of a motion for default judgment. Rule 55(b)(2) provides in pertinent part:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper . . . .

Fed. R. Civ. P. 55(b)(2). "The court also may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002); see also Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992) (the court must give the plaintiff notice that it intends to investigate liability at a hearing held after the entry of default). Although a default is deemed to be an admission of the well-pled allegations in the complaint, it is not deemed an admission to the plaintiff's legal

conclusions.  Furthermore, the court may not simply accept the plaintiff's statement of damages.

## Background

I. Procedural History

HDI commenced this action on February 24, 2003, by filing a verified complaint against Vivian Hodgdon ("Hodgdon"), Art in Cooking, Inc. ("AIC"), Patricia Carpenter ("Carpenter") and the LLC, alleging that each of the defendants committed copyright infringement, trademark infringement, unfair and deceptive acts, and conversion.  Document No. 1.  HDI concurrently filed a motion for a preliminary injunction seeking to enjoin alleged copyright infringement by Hodgdon and AIC.  Document No. 3.  HDI did not seek preliminary injunctive relief against Carpenter or the LLC. See id. at 1 n.1 ("At this time, [HDI] does not seek injunctive relief against defendants [Carpenter and the LLC].").

This Court held a hearing on the motion for a preliminary injunction in March 2003.  On April 7, 2003, the Court issued a Report and Recommendation noting that HDI did not seek a preliminary injunction against Carpenter and the LLC.  Document No. 16 at 3.  Id.  The Court recommended that HDI be granted limited injunctive relief applicable to "[Hodgdon and AIC], together with their agents, affiliates, subsidiaries and any

person in active concert with them." Id. at 2, 29.

On April 23, 2003, HDI filed a verified amended complaint against the same defendants. Document No. 28 at 1. With regard to the LLC, HDI alleges that "[Carpenter] individually and in the name of the LLC, registered a domain name identical to Hill Design's famous trademark, namely 'www.BROWNBAGCOOKIEART.com.'" Id., ¶ 49. HDI alleges that Carpenter refused to surrender or withdraw that registration despite repeated requests. Id.

HDI further alleges that "Patricia Carpenter and her company, The Garden Shed, knowingly aided and abetted [Hodgdon] in her malfeasance, and actively participated in [Hodgdon's] acts to take [HDI's] valuable tangible and intangible property." Id., ¶ 56. At paragraphs 57–59, HDI alleges:

> 57. The Garden Shed operated as a sole proprietorship from at least December 2001, with Patricia Carpenter as the sole proprietor. The Garden Shed owned, used, or leased, a single facility to operate its business as a retailer of garden and home goods.
>
> 58. The above-referenced acts undertaken by Patricia Carpenter were committed in her capacity as the sole proprietor of The Garden Shed and were for the intended benefit of and on behalf of The Garden Shed.
>
> 59. The Garden Shed was incorporated on or around November 2002. Other than the filing for incorporation as a limited liability company, and the change of the name from The Garden Shed to The Garden Shed, LLC, the owners, business and assets of the LLC continued unchanged. The LLC is, upon information and belief, controlled wholly by Patricia Carpenter, the sole shareholder. The LLC maintains the same business

      facilities, assets and product line as the sole
      proprietorship.  All assets were transferred from the
      sole proprietorship to the LLC.

Id., ¶¶ 57-59.  HDI asserts the legal conclusion that "[the LLC] is liable to HDI for the acts, debts and/or liabilities of The Garden Shed, a sole proprietorship."  Id., ¶ 60.  On June 4, 2003, Carpenter and the LLC, filed an answer to HDI's amended complaint denying HDI's allegations.  See Document No. 35.

    On July 7, 2003, this Court issued a second Report and Recommendation after HDI's motion was recommitted for reconsideration of the applicability of the first-sale doctrine. The Court acknowledged that the first-sale doctrine did not apply as to the items that Hodgdon took without permission from the Helen Ross Inventory,[1] but nonetheless recommended that HDI be granted only limited relief.  Document No. 36.  The Court made no findings regarding the LLC.  Id.

    On September 2, 2003, Judge McAuliffe issued an order accepting this Court's July 7, 2003 Report and Recommendation. Document No. 41.  Judge McAuliffe wrote, in pertinent part:

---

[1] The "Helen Ross Inventory" was defined in the April 7, 2003 Report and Recommendation as three trailer loads of HDI's Concord inventory that was sold to Helen Ross, the sister of HDI principal Lucianna Ross Natkiel, prior to the auction of HDI's Concord inventory by HDI's creditors.  See Document No. 16 at 10. Although she did not appear at the injunction hearing, Ms. Ross testified at the damages hearing that she purchased her inventory from the Bank of New Hampshire for $8,000.  See also Pl.'s Ex. 8.

5

> Pending a final determination on the merits in this case, [Hodgdon and AIC], together with their agents, affiliates, subsidiaries and any person in active concert with or participation with them, are hereby enjoined and restrained from suggesting or implying that they have an ongoing business relationship with plaintiff unless expressly authorized to do so in writing, and are enjoined and restrained from obstructing or obscuring plaintiff's copyright notice in connection with the sale, promotion, advertising, or offering of items made by Vivian Hodgdon at the Hill facility, or obtained by Hodgdon through other sources. Those same parties are also enjoined and restrained from selling items from the Helen Ross Inventory to fill contracts post-dating April 11, 2002, but are <u>not</u> enjoined or restrained from selling items from the Helen Ross inventory to fill outstanding contracts pre-dating April 11, 2002, and are <u>not</u> enjoined or restrained from selling BROWN BAG items that Hodgdon made lawfully at the Hill facility under an oral agreement with the Natkiels.

<u>Id.</u> at 4-5 (emphasis in original).

On August 26, 2003, the Clerk notified the LLC that the court's records indicated that its attorney had withdrawn from representing it.  Document No. 39.  The Clerk informed the LLC that "[a]n appearance by new counsel of record must be filed by September 15, 2003," or "the file will be referred to a judicial officer for further action which may include default."  <u>Id.</u>

On September 19, 2003, Carpenter moved to extend the time for the LLC to obtain counsel, which was granted until January 5, 2004.  Document No. 42.  Carpenter filed a second motion to extend time to obtain counsel for the LLC on January 5, 2004, which was not addressed by the court.  <u>See</u> Document No. 45.  On

6

January 26, 2004, the Clerk entered a default as to the LLC and indicated that a damages hearing "would be scheduled upon adjudication of all the remaining claims or parties."  Document No. 53.  The LLC has not moved to set aside the entry of default.

On April 4, 2005, HDI settled with Hodgdon and AIC. Document No. 93 at 3, ¶ 8.  On August 15, 2005, HDI voluntarily dismissed Carpenter with prejudice from this action leaving the LLC as the only remaining defendant.  Document No. 71.

On January 26, 2006, the Clerk directed HDI to submit a motion for default judgment as to the LLC by February 24, 2006 with an affidavit specifying its damages.  Document No. 90.  On February 24, 2006, HDI submitted the instant motion for default judgment as to the LLC with affidavits from Garfield Goodrum, Esq., and Ms. Natkiel.  Document No. 93.

II.   Testimony from the Preliminary Injunction Hearing

The official transcript of the injunction hearing is part of the court's record.  See Document Nos. 21 and 22.  Carpenter testified that she worked as a full-time employee for Verizon and that she owned a florist shop called "The Garden Shed."  Document No. 22 at 77:14.  Carpenter collected HDI's copyrighted BROWN BAG products over the years.  Id. at 77:18-20.  When she read in a newspaper that BROWN BAG products were going to be sold at an

auction in Concord, she decided to attend the auction.[2]  Id. at 77:17-23; 102:24-25.

After the auction, Carpenter made a deal with Roger Slate, who successfully bid on about 80% of the available items, to purchase "quite a bit of inventory," including "cookie molds, garden pots, planters, books, cookie mix and plant stakes." Id. at 79:4-21; 119:11-12.  Carpenter also purchased BROWN BAG items from another successful bidder at the auction named Ralph Langevin.  Id. at 79:21-25; 80:1-5.  In addition to the foregoing purchases, Carpenter testified that she bought the whole inventory of "cookie tiles" available from three different Christmas Tree Shops.  Id. at 80:6-15.  She estimated that she owned more than 10,000 BROWN BAG items in total, which she purchased with money from her personal checking account.  Id. at 79:13-14; 98:4-9; 111:19-22.  After accumulating such a large amount of items, Carpenter decided to found The Garden Shed as a sole proprietorship in Pittsfield, New Hampshire, in December 2001.  Id. at 81:2-6.

Carpenter testified that she later purchased approximately

---

[2]The date of the auction is not specified in the record, but it appears to have taken place in November 2001.

$2,000 worth of BROWN BAG items from Hodgdon's company AIC.[3] Hodgdon was operating AIC at HDI's facility in Hill, New Hampshire, when Carpenter made her purchases.  Id. at 112:2-13. Carpenter bought BROWN BAG items that Hodgdon made and items from the Helen Ross Inventory that Hodgdon sold with the permission of HDI's principals.  Id. at 122:18-25; 123:1-3.

In April 2002, negotiations on a business deal between Hodgdon and the Natkiels broke down, and the Natkiels asked Hodgdon to leave the Hill facility.  Carpenter testified that while she was at the facility picking up an order, Hodgdon spoke with her attorney who advised Hodgdon that she could remove the Helen Ross Inventory because Hodgdon intended to purchase it. Id. at 109:11-18.  Carpenter assisted Hodgdon in removing the Helen Ross Inventory from the Hill facility.

Carpenter began selling BROWN BAG items on eBay, an online auction Web site, in April 2002.  She listed items on eBay using the e-mail address "fonhomedialo.aol.com."  Id. at 116:17-19. Carpenter testified that the items that she listed on eBay from the Helen Ross Inventory were items that she purchased from AIC.

---

[3] Records produced by AIC during discovery reflect sales by AIC to The Garden Shed, a sole proprietorship at the time, between March 22, 2002 and April 5, 2002 in the amount of $1,327.30.  Pl.'s Ex. 3.  Carpenter testified that BROWN BAG recipe books were not attached to the cookie molds that she bought from AIC.  See Document No. 22 at 114:14-19.

9

Id. at 122:24-25; 123:1-3.

Carpenter admitted that she registered the domain name "brownbagcookieart.com" in March or April of 2002. Id. at 115:11-15. Although she intended to use it after purchasing her inventory of BROWN BAG items, she never did. Id. at 115:18-22. She acknowledged that HDI's counsel asked her to relinquish it, but she refused since HDI would not give her the $35 dollars that she paid for the registration. Id. at 22-24.

Carpenter incorporated The Garden Shed as a New Hampshire limited liability corporation on October 8, 2002. Id. at 98:2-3.

III. <u>Evidence Introduced During The Damages Hearing</u>

    A.    <u>Copyright Ownership</u>

HDI established at the damages hearing that it is the owner of copyrights for designs and expression of those designs in master molds, and the owner of a copyrighted cookie recipe book. See Pl.'s Exs. 6(A), 6(B), and 6(E). Ms. Natkiel testified that over the years HDI has registered about 200 different works.

    B.    <u>Evidence Regarding the LLC</u>

On December 11, 2003, Carpenter filed an annual report with the New Hampshire Secretary of State identifying the principal office address for The Garden Shed, LLC, as 1463 Old NH Turnpike Northwood, NH 03261. Pl.'s Ex. 18. Carpenter identified herself

as a member of the company, and as the Registered Agent with an office address of 1022 Dover Road, Epsom, NH 03234.  Id.  No other members of the company are identified.  HDI's counsel asserted that The Garden Shed, LLC, was administratively dissolved by the state of New Hampshire on September 1, 2005.

HDI introduced copies of "eBay Registration Information" forms that HDI obtained from eBay in response to HDI's subpoena. See Pl.'s Ex. 5(a) and 5(c).  Exhibit 5(c) shows that a "User Id" named "onlywant2fish/thegardenshedllc@aol.com" was registered by Howard Carpenter on October 7, 2004.  See Pl.'s Ex. 5(c) at 1. The address provided for that User Id is P.O.B. 568, Seabrook, NH, 03258.  Exhibit 5(c) also shows that a "User Id" named "telefloraflorist/fonhomedialo@aol.com" was registered by Howard Carpenter on December 5, 2000.  Id. at 2.  The address for that User Id is P.O.B. 788, Epsom, NH 03234.  The billing information for that User Id is listed as Patricia Carpenter of 36 Loudon Road, Pittsfield, NH 03263.  Id.

As discussed above, Patricia Carpenter admitted at the preliminary injunction hearing that she lists items on eBay using the e-mail address "fonhomedialo.aol.com."  Document No. 22 at 116:17-19.  Carpenter also stated at the injunction hearing that she is married to Howard Carpenter.  But Howard Carpenter has never been named as a defendant in this lawsuit, and he is not

identified as a member of The Garden Shed, LLC.  See Pl.'s Ex. 18.

HDI also introduced records produced by PayPal, Inc. in response to a subpoena from HDI.  See Pl.'s Ex. 13(A)-(E). "PayPal is a payment services company that allows anyone with an email address to electronically send and/or receive money online."  Pl.'s Ex. 13(B).  PayPal is commonly used for paying for auction items, paying for online purchases, sending money to family or friends, and paying bills online.  Id.  The PayPal records introduced at the damages hearing show that the money that was received in the account Carpenter opened was deposited into her personal checking account.  Pl.'s Ex. 13(C).

HDI alleged during the damages hearing that Ms. Natkiel "compared and tallied the names and numbers of cookie molds and other information" on documents that eBay produced showing items listed on eBay by the two identified User Ids to produce two summary reports of eBay sales that HDI attempts to attribute to the LLC.  See Pl.'s Exhibits 14(A), 14(B) and 15(A).

### Discussion

I.  HDI's Requested Relief

In its motion for default judgment, HDI requests that the court make the existing preliminary injunction of September 2,

2003 permanently applicable to the LLC and compute damages to be assessed against the LLC "by mere mathematical calculation, applying the number of infringements to the statutorily prescribed range of damages, considering the willfulness of the infringement and other aggravating facts." Id. at 3-4, ¶ 11. HDI suggests that the court order subsequent submissions on attorneys' fees from HDI's current and former counsel. Id. And HDI seeks a judgment for monetary damages against the LLC for willful copyright and trademark infringement "in the amount of at least $100,000." Id. at 4, ¶ B.

II. Alleged Unlawful Distributions By The Garden Shed, LLC

The evidence presented at the damages hearing does not establish that the LLC violated HDI's rights. Patricia Carpenter testified at the preliminary injunction hearing that she bought cookie molds that were sold at auction[4] and the inventories on hand at three different Christmas Tree Shops in addition to the BROWN BAG items that she bought from AIC. All the court has to support HDI's claim that Patricia Carpenter converted the BROWN

---

[4] Ms. Natkiel testified at the damages hearing that she did not believe that any cookie molds were sold at the auction, but she admits that she was not there. Although HDI cross-examined Carpenter at the injunction hearing, her testimony on this point was not rebutted.

13

BAG items that are not specifically accounted for on AIC's invoices is speculation.

Furthermore, to the extent that HDI proved infringing sales of stolen items, those sales were by the Carpenters in their individual capacities and not by the LLC. There was no evidence presented at the damages hearing that shows that the BROWN BAG cookie mold inventory that Patricia Carpenter obtained was ever transferred to or owned by the Garden Shed, LLC. The eBay registrations upon which HDI relied at the damages hearing were completed by Howard Carpenter, who is not a party to this action. The evidence further shows that the money that was received in the PayPal accounts for the allegedly infringing sales was deposited into a personal checking account, not the corporate account.

In sum, the Court finds that HDI has not established infringing distributions by the LLC. The facts alleged in the amended complaint for the purpose of attempting to establish the LLC's liability are contrary to the uncontroverted evidence in the record.

III. <u>Applicability and Violation of the Preliminary Injunction</u>

HDI asserts in its motion for default judgment damages and in its contempt motion that the LLC willfully violated the

Court's September 2, 2003 preliminary injunction. This claim is not supported by the record for numerous reasons. First, as discussed above, the evidence shows that the sales complained of were conducted by Patricia Carpenter and/or Howard Carpenter in their individual capacities, not by the LLC. Second, HDI specifically stated in its motion for a preliminary injunction that it did not seek preliminary injunctive relief against the LLC. See Document No. 3 at 1 n.1. Third, the Court made no findings of infringing conduct by the LLC during the injunction hearing. To the contrary, this Court questioned HDI's counsel regarding whether the LLC, ought not be dismissed from this lawsuit. See Document No. 22 at 98:10-23. And fourth, the preliminary injunction specifically referenced the conduct of Hodgdon and her company AIC.

To the extent that the court enjoined post-April 11, 2002 distributions of items from the Helen Ross Inventory, the record shows that the prohibition was not intended to apply to Carpenter, the LLC or sales by Ms. Carpenter of items from the Helen Ross Inventory that Carpenter purchased while Hodgdon was engaged in negotiations with the Natkiels. See Document No. 22 at 122:24-25 and 123:1-3. Accordingly the Court rejects HDI's argument that the evidence demonstrates that the LLC willfully violated the September 2, 2003 preliminary injunction.

15

IV. <u>Garden Shed Liability Imputed From Carpenter's Acts</u>

Counsel asserted that the LLC should have damages assessed, be held in contempt and be further enjoined because of sales on Ebay by the Carpenters in the fall of 2005.

Ms. Carpenter was dismissed from this case on August 15, 2005. Mr. Carpenter was never a party to the case. The LLC was administratively dissolved on September 1, 2005. The LLC was created October of 2002. All sales allegedly made in violation of the injunction and/or plaintiff's trademark prior to the LLC's existence are shown on plaintiff's exhibit 14(B). There was not a shred of evidence offered to prove that the LLC assumed any liability from those sales. Any liability for them by Patricia Carpenter was extinguished by plaintiff's dismissal of her with prejudice.

The allegedly offending sales after September 1, 2005, are set out in exhibit 14(A). At that time the corporation had ceased to exist. At that time neither Mr. nor Mrs. Carpenter were parties to the suit. Neither they nor the LLC were subject to the injunction. Plaintiff did not offer any evidence that any of the molds sold (as shown on exhibit 14(A)) were ever owned by the LLC. There simply is no credible evidence that the Carpenters were making these sales as agents of the LLC as part of "winding up" or that they had misappropriated LLC assets.

16

<u>Conclusion</u>

Plaintiff has proved multiple sales of molds by the Carpenters on Ebay.  However, they are not parties to the suit and cannot be held to account for damages.  Furthermore, neither they nor the LLC were intended to be nor were they subject to the injunction.  Plaintiff has failed to prove any damages against the LLC.

I recommend that the motion for contempt (document no. 11) be denied.  I further recommend that plaintiff be awarded zero damages against The Garden Shed, LLC.  Finally, I recommend that no injunction be permanently entered as to The Garden Shed, LLC, or as to non-parties, Mr. and Mrs. Carpenter.


          /s/ James R. Muirhead
          James R. Muirhead
          United States Magistrate Judge

September 8, 2006

cc: Garfield B. Goodrum, Jr.
    Howard Carpenter, pro se